ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| WILLIAM OMAR CRUZ TORRES <br><br> Apelante <br><br> v. <br><br> LISANDRA GERENA PAGÁN <br><br> Apelada | TA2025AP00525 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón <br><br> Caso Núm.: DO2024RF00017 <br><br> Sobre: Divorcio – Ruptura Irreparable |

Panel integrado por su presidenta la Juez Grana Martínez, el Juez Ronda Del Toro y la Juez Lotti Rodríguez

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, hoy 19 de diciembre de 2025.

Comparece antes nos el señor **WILLIAM OMAR CRUZ TORRES** por conducto de su representación legal, mediante una Apelación instado el 7 de noviembre de 2025. En su recurso, nos solicita que revoquemos la Resolución del Tribunal de Primera Instancia notificada el 7 de octubre de 2025 y se declare el Hogar Seguro a favor de él.

Por los fundamentos que expondremos a continuación se confirma la determinación del Tribunal de Primera Instancia notificada el 7 de octubre de 2025. Exponemos el trasfondo factico y procesal que acompaña a la presente controversia.

## I.

El 17 de octubre de 2024, el Apelante presentó demanda de divorcio y custodia en contra de Lisandra Gerena Pagan

(Apelada).[1] El 28 de octubre de 2024, se diligenció el emplazamiento a la Apelada.[2]

El 2 de diciembre de 2024, la Apelada presentó la Contestación a la Demanda y Reconvención.[3] En dicho escrito expuso que solicita la custodia monoparental de la hija menor de edad habida entre las partes.[4]

El 17 de diciembre de 2025, el Tribunal de Primera Instancia declaro "Ha Lugar" la demanda de divorcio por la causal de Ruptura Irreparable.[5] En esta, el Tribunal dispuso que "la patria potestad será compartida y la custodia se adjudica a la parte demandada".[6]

Posteriormente, el 17 de julio de 2025, el Tribunal mediante una Resolución estableció que la custodia será una compartida.[7]

El 28 de agosto de 2025, la Parte Apelada presentó una moción titulado Urgente Solicitud de Derecho a Permanecer en la vivienda familiar y constitución de hogar seguro.[8] En su escrito expuso que solicita el Hogar Seguro del Inmueble ubicado en la Urbanización Dorado del Mar JJ 11 Calle Rosa de los Vientos en Dorado Puerto Rico.[9] Se alegó que dicha propiedad es la vivienda de la hija menor entre las partes y de la Apelada. Asimismo, se expuso que el inmueble fue adquirido en común proindiviso.[10]

Luego, el 9 de septiembre de 2025, el Apelante presentó una Moción [en] oposici[ó]n a solicitud de hogar seguro. En síntesis, expuso que la custodia de la menor es una compartida y

---

[1] Véase entrada de SUMAC TPI núm. 1.
[2] Véase entrada de SUMAC TPI núm. 6.
[3] Véase entrada de SUMAC TPI núm. 26.
[4] *Íd.*
[5] Véase entrada de SUMAC TPI núm. 30.
[6] *Íd.*
[7] Véase entrada de SUMAC TPI núm. 56. La custodia de la menor de edad se estableció mediante un plan 2-2-3. *Íd.*
[8] Véase entrada de SUMAC TPI núm. 62.
[9] *Íd.*
[10] *Íd.*

a el le toca estar el cincuenta y cuatro (54) por ciento del tiempo con la menor. Además, cita un reglamento federal en específico la sección 36.4206 (d)(1) del Título 38 del Código de Reglamentos Federales en la cual dispone que:

> *(d) No loan shall be guaranteed pursuant to 38 U.S.C. 3712(a)(1) unless*:
>
> *(1) The veteran certifies, in such form as the Secretary shall prescribe, that he or she will personally occupy the property as his or her home or, if the veteran is on active duty status as a member of the Armed Forces and is for that reason unable to occupy the property, the veteran's spouse must certify that he or she will personally occupy the property as his or her home. For the purposes of this section, the words personally occupy the property as his or her home mean that the veteran as of the date of his or her certification actually lives in the property personally as his or her residence or actually intends upon completion of the loan and acquisition of the manufactured home to move into the home personally within a reasonable time and to utilize the home as his or her residence.*

Por último, el Apelante señaló que la Apelada es dueña de un bien inmueble en el municipio de Hatillo.[11]

El 10 de septiembre de 2025, la Apelada presentó una Moción en solicitud de desacato y referido a la unidad social. En lo que respecta a el hogar seguro expuso que el inmueble de Hatillo no está habitable y que existe controversia sobre la titularidad.[12]

Mediante Resolución dictada el 26 de septiembre de 2025 y notificada el 7 de octubre de 2025, el Tribunal de Primera Instancia declaró "Ha Lugar" la petición de Hogar seguro presentada por la Apelada. Asimismo, el Tribunal expuso que:

> [S]e constituye como hogar seguro para la menor A.S.C.G. y su madre, hasta que la menor advenga a la mayoría de edad o se emancipe, o la madre contraiga nuevas nupcias o inicie una relación de convivencia. Esta determinación judicial deberá estar protegida de cualquier proceso de desahucio por la Administración de Veteranos, tomando en

---

[11] *Íd.*
[12] Véase entrada de SUMAC TPI núm. 64.

consideración que este tribunal ha ejercido su deber de *parens patriae* en el mejor bienestar de la menor hija de un veterano.[13]

El 17 de octubre de 2025, el Apelante presentó una Moción de Reconsideración.[14] Por otro lado, el 31 de octubre de 2025, la parte apelada presentó su Replica a Reconsideración.[15] El 31 de octubre de 2025, el Tribunal de Primera Instancia mediante una Resolución Interlocutoria declaró "No Ha Lugar" la solicitud de Reconsideración.[16]

Inconforme con esta determinación, el 7 de noviembre de 2025, el Apelante presentó un Recurso de Apelación en la cual realizó los siguientes señalamientos de errores:

> PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL APLICAR EL ARTICULO 476 DEL CÓDIGO CIVIL SOBRE EL HOGAR SEGURO CUANDO AMBAS PARTES SE ENCUENTRAN EN IGUALDAD DE CONDICIONES.

> SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DICTAR RESOLUCION APLICANDO LA LEY DE PUERTO RICO SIN TOMAR EN CONSIDERACIÓN LA LEY FEDERAL APLICABLE BAJO EL ARTÍCULO 36.4206(D)(1) DEL TITULO 38 DEL CÓDIGO DE REGLAMENTO DE FEDERALES.

La parte Apelada no compareció. Quedo el recurso perfeccionado para ser resuelto.

## II.

### A. Hogar Seguro.

El principio fundamental del hogar seguro es la protección de la familia. *The Federal Land Bank of Baltimore v. Corte Municipal*, 47 DPR 942 (1935). El Tribunal Supremo de Puerto Rico ha "sostenido que, en Puerto Rico, como en toda sociedad civilizada, hay un eminente interés social en proteger y fomentar la

---

[13] Véase entrada de SUMAC TPI núm. 85.
[14] Véase entrada de SUMAC TPI núm. 86.
[15] Véase entrada de SUMAC TPI núm. 88.
[16] Véase entrada de SUMAC TPI núm. 88.

adquisición por cada familia de una vivienda segura, cómoda y adecuada, reflejado en una política publica de claros perfiles en la profusa legislación aprobada a lo largo de los años". *Cruz v. Irizarry*, 107 DPR 655, 661 (1978).

La figura del hogar seguro se encuentra codificada tanto en el Código Civil como en leyes especiales. En lo que respecta al Código Civil el Art. 476 establece los criterios para la atribución preferente de la vivienda familiar, estos son los siguientes:

> Al momento de adjudicarse los bienes comunes del matrimonio disuelto, cualesquiera de los excónyuges pueden reclamar la atribución preferente de la vivienda que, al momento de la disolución, constituye el hogar principal del matrimonio y de la familia.

> Al estimar la petición de atribución preferente sobre la vivienda familiar, el tribunal debe considerar las siguientes circunstancias:
> (a) La posibilidad de cada excónyuge de adquirir su propia vivienda;
> (b) La existencia de otros inmuebles en el patrimonio conyugal que pueden cumplir el mismo propósito; y
> (c) La solvencia económica de ambos excónyuges para atender sus propias necesidades. 31 LPRA sec. 6841.

Cualquiera de los excónyuges o cualquiera de los hijos que estén bajo su patria potestad puede solicitar el derecho a permanecer en el inmueble perteneciente a la Sociedad de Bienes Gananciales que supone el hogar principal del matrimonio y de la familia antes comenzar el proceso de divorcio. 31 LPRA sec. 6851. Además, el derecho puede solicitarse desde que se necesita, ya sea en la petición de divorcio, durante el proceso o luego de que se emita la sentencia. *Íd.*

El legislador establece en el Art. 478 del Código Civil una lista no taxativa en torno a criterios para conceder el derecho de Hogar Seguro. Por consiguiente, el tribunal debe considerar los siguientes factores:

(a)     los acuerdos de los conyugues sobre el uso y el destino de la vivienda durante la vigencia del matrimonio y después de su disolución;

(b)     si el conyugue solicitante mantiene la custodia de los hijos menores de edad;

(c)     si el conyugue solicitante retiene la patria potestad prorrogada o la tutela de los hijos mayores incapacitados o con impedimentos físicos que requieren asistencia especial y constante en el entorno familiar;

(d)     si los hijos mayores de edad, pero menores de veinticinco (25) anos, permanecen en el hogar familiar mientras estudian o se preparan para un oficio;

(e)     si la vivienda familiar es el único inmueble que pueda cumplir razonablemente ese propósito dentro del patrimonio conyugal, sin que se afecte significativamente el bienestar optimo de los beneficiados al momento de su concesión con más necesidad de protección;

(f)     si el conyugue solicitante, aunque no tenga hijos o, de tenerlos, no vivan en su compañía, necesita de esa protección especial, por su edad y situación personal; y

(g)     cualquier otro factor que sea pertinente para justificar el reclamo. 31 LPRA sec. 6852.

Destacamos que del Código Civil no se desprende un escenario sobre que factor debe prevalecer cuando exista una custodia compartida entre los ex conyugues.

La jurisprudencia interpretativa en torno al Hogar seguro ha expuesto que "no hay duda de que el hilo conductor en estas decisiones fue la protección de la familia y los menores, impartiéndole al derecho de hogar seguro una *interpretación liberal y expansiva*". *Candelario v. Muñiz*, 171 DPR 530, 539 (2007); *Cruz v. Irizarry*, supra, pág. 660 (1978). (Énfasis suplido).

## B.  Doctrina de Campo Ocupado

El campo ocupado o *preemption* proviene de la Cláusula de Supremacía de la Constitución de los Estados Unidos. El Art. VI de la Constitución Federal establece que "*[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and al Treaties made, or which shall be made, under the*

*Authority of the United States, shall be the supreme Law of the Land* (…). Art. VI, Const. EE.UU., LPRA, Tomo 1, ed. 2016, pags. 168-169.

La doctrina de campo ocupado tiene dos modalidades que inciden en la jurisdicción, estas son la legislativa y la adjudicativa. *Rodríguez v. Hospital Español Auxilio Mutuo,* 2025 TSPR 55, 215 DPR __ (2025). En su vertiente legislativa dicho concepto aplica sobre quien tiene la facultad para formular política pública mediante legislación en torno a determinada materia. *Íd.* En su vertiente judicial la doctrina aplica a cuál foro, ya sea estatal o federal, puede resolver los casos y controversias que surjan dentro del territorio. *Íd.*

Asimismo, se entiende que existe campo ocupado en aquellos escenarios que "cierto interés o propósito federal es tan dominante que no debe existir reglamentación estatal, o cuando la normativa estatal podría producir un resultado incompatible con los objetivos federales en determinada área". *Municipio de Peñuelas v. Ecosystems*, 197 DPR 5, 15 (2016) citando a *Rodríguez v. Overseas Military,* 160 DPR 270, 282 (2003). Por consiguiente, cualquier ley estatal que sea contrario a un estatuto federal será nulo. *Íd*.

El Departamento de Asuntos del Veterano es un departamento federal de la Rama Ejecutiva de los Estados Unidos. 38 USCA sec. 301. El propósito de dicho Departamento es administrar las leyes, proveyendo beneficios y servicios a los veteranos, sus dependientes y los beneficiarios al veterano. *Íd*.

El Titulo 38 del *Code of Federal Regulation* rige lo relacionado a las pensiones, bonos y la asistencia para veteranos. Asimismo, su parte 36 regula lo que tiene que ver con las *garantías de préstamos* que otorga la agencia. La sección 36.4206 referente a

los *Underwriting Standards, Occupancy, and Non- Discrimination Requirements* dispone en su inciso (d)(1) que:

> *The veterans certifies, in such form as the Secretary shall prescribe, that he or she will personally occupy the property as his or her home or, if the veteran is on active duty status as a member of the Armed Forces and is for that reason unable to occupy the property, the veteran's spouse must certify that he or she will personally occupy the property as his or her home. For the purposes of this section, the words personally occupy the property as his or her home mean that the veteran as the date of his or her certification actually lives in the property personally as his or her residence or actually intendeds upon completion of the loan and acquisition of the manufactured home to move into the home personally within a reasonable time and to utilize the home as his or her residence.* 38 CFR sec. 36.4206.

### III.

El 17 de octubre de 2024, el Apelante presentó una demanda de divorcio y custodia en contra de la Apelada. Según el Art. 477 del Código Civil una acción de hogar seguro se puede solicitar en la misma acción de divorcio. Asimismo, el artículo antes mencionado establece que cualquiera de los ex conyugues puede solicitar el derecho a permanecer en el inmueble que sea el hogar principal y perteneciente a la Sociedad de Bienes Gananciales. El 28 de agosto de 2025, la Apelada en el proceso de divorcio insto una acción para solicitar el hogar seguro del inmueble localizado en la Urbanización Dorado del Mar JJ 11 Calle Rosa de los Vientos en Dorado Puerto Rico. No obstante, no surge del expediente del foro primario que el Apelante haya presentado una solicitud por escrito en torno al hogar seguro. Sino hasta que se lleva a cabo la vista sobre hogar seguro. Por lo cual, hizo la gestión con posterioridad a la solicitud de la Apelada.

El Art. 476 del Código Civil establece los criterios para la atribución preferente de la vivienda familiar, estos son los siguientes: "(a) la posibilidad de cada excónyuge de adquirir su

propia vivienda" y "(c) la solvencia economía de ambos excónyuges para atender sus propias necesidades". Analizaremos ambos incisos en conjunto debido a que son de carácter económico. El Apelante señala que vive "arrimado" en el hogar de su hermana. Sin embargo, surge del expediente que el Apelante tiene mayores recursos económicos que la Apelada. El salario bruto del Apelante es de $103,255.99 el cual es uno considerable en el contexto puertorriqueño *vis a vis $72,728.00 de* ingreso de la Apelada.  Por consiguiente, es más viable que el Apelante pueda adquirir otra vivienda. Además, la solvencia económica del Apelante debe ser mayor debido a que tenía intención de pagar $120,000.00 por habilitar el inmueble ubicado en el municipio de Hatillo y su excónyuge viviera en el.

Por otro lado, el inciso (b) establece que "la existencia de otros inmuebles en el patrimonio conyugal que pueden cumplir el mismo propósito".  El Apelante hace referencia en su Recurso que la Apelada cuenta con un inmueble en el municipio de Hatillo el cual fue donado. Asimismo, expone como parte de una oferta transaccional que el inmueble no está abandonado.  Por lo cual, cuenta con otro inmueble en su patrimonio y puede vivirlo. No nos persuade dicho argumento, el referido inmueble se encuentra en condiciones *inhabitable* según se desprende de las imágenes en el expediente mostradas *por la* Apelada.[17] (Énfasis nuestro). El Apelante no puede pretender que su ex conyugue e hija viva en un inmueble que está en un amplio deterioro.

En lo que respecta al segundo error, el Apelante expone que se tenía que aplicar la sección 36.4206(D)(1) del Título 38 del *Code of Federal Regulation*. Asimismo, señala que aplica la

---

[17] Véase entrada de SUMAC TPI núm. 71.

doctrina de campo ocupado o desplazamiento implícito debido a que hay un propósito federal tan dominante que no debe existir reglamentación estatal.

El análisis realizado por el Apelante solo son meras alegaciones debido a que no realiza un análisis bajo que instancia es que aplica la doctrina de campo ocupado. Por el mero hecho de existir una disposición federal no significa que se aplica automáticamente dicha doctrina. Las disposiciones del hogar seguro codificadas en el Código Civil no son mutuamente excluyentes de los establecido en la Sección 36.4206(D)(1) del Título 38. Las normas de Hogar y Seguro y la posesión se rigen por el derecho del Código Civil no por reglamentos o legislación federal.

La sección 36.4206(D)(1) solo se limita a la otorgación de un préstamo por parte de veterano a cambio de que el veterano viva personalmente en la residencia. Por lo cual, solo regula la elegibilidad de préstamo.  Destacamos que la sección no dispone expresa o implícitamente limitación alguna al hogar seguro o el *homestead* como se conoce en las jurisdicciones angloparlante.

Además, según la Escritura de Hipoteca número cincuenta y cuatro (54) otorgada ante la notaría Olga Yolanda Cabrera Ramos el 2 de noviembre de 2019, las dos (2) partes son titulares del inmueble. Por lo tanto, ambas partes tienen un derecho propietario este. El derecho a hogar seguro no menoscaba tampoco la titularidad que tiene el Apelante sobre el hogar como tampoco menoscaba el préstamo o las ayudas otorgadas por los programas para veteranos o veteranas.

**IV.**

Por los fundamentos antes expuestos, confirmamos la Resolución notificada por el Tribunal de Primera Instancia el 7 de octubre de 2025.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones